No. _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

CHRISTOPHER N. AGBAJE,

Petitioner,

**versus**

E. EMMERICH, WARDEN,

IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.



26-C-742 1

_____

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND ARTICLE I,
SECTION 9, CLAUSE 2 OF THE UNITED STATES CONSTITUTION

_____

CHRISTOPHER N. AGBAJE
BOP Reg. No. 99051-510
Federal Correctional Institution
Post Office Box 1000
Oxford, Wisconsin 53952

No. _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER N. AGBAJE,

Petitioner,

**versus**

E. EMMERICH, WARDEN,
IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

---

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND ARTICLE I, SECTION 9, CLAUSE 2 OF THE UNITED STATES CONSTITUTION

Above captioned Petitioner, pro se, respectfully **MOVES** this Honorable Court for a **Writ of Habeas Corpus** pursuant to Title 28 U.S.C. § 2241(a). However, because of the statutory provisions which frustrate **ANY COURTS'** jurisdiction to adjudicate the underlying issue contained herein, Petitioner seeks habeas relief under the scope of the **"Suspension Clause"** of the United States Constitution's Artilce I, Section 9, Clause 2.

## INTRODUCTION

**The** posture of this petition poses an important question of **"First Impression"** regarding when, where, and under what circumstances a federal court can issue a writ of habeas corpus when governmental agencies, who insulate themselves from judicial review behind jurisdiction stripping statutes, usurp its own jurisdiction and issues illegal expedited removal orders; which subsequently adversely affects a prisoners duration of confinement. The facts of this case derive from an expedited removal order

-1-

Petitioner's underlying complaint revolves around his inability to apply his earned First Step Act Time Credits ("FTCs") because of the enforcement of an unlawful order of expedited removal issued under 8 U.S.C. § 1225(b)(1). However, 8 U.S.C. § 1252(a)(2)(A) precludes ANY COURT from reviewing the legality of expedited removal orders issued under §1225(b)(1). Therefore, because §1252(a)(2)(A) does not provide for an adequate and effective alternative collateral vehicle, this Court enjoys supplemental jurisdiction under Article I, Section 9, Clause 2, i.e., the **"Suspension Clause"** of the United States Constitution.

## STATEMENT OF THE ISSUES

I).   Whether Petitioner's Current Confinement Is Being Unconstitutionally Extended Because Of An Unlawfully Imposed Expedited Order of Removal.

II).  Whether Title 8 U.S.C. § 1252(a)(2)(A) Effectively Insulates The Illegal Removal Order From Judicial Review In Violation Of The United States Constitution's Suspension Clause, As Applied To Petitioner.

III). Whether An Alien Who Was Extradited And Involuntarily Paroled Into The United States Under Title 8 U.S.C. § 1182(d)(5) Could Be Subject To Any Removal Proceedings Before Being Returned To The Paroling Agency And Afforded A Reasonable Opportunity To Depart Voluntarily.

## STANDARD OF REVIEW

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdiction." 28 **U.S.C.** § 2241(a). "The writ of habeas corpus shall not be extended to a prisoner unless," relevant here, "he is in custody in violation of the Constitution or laws ... of the United States." **Id.** at §2241(c)(3). In general, prisoners "who want to challenge their convictions, their sentences, or administrative orders revoking good-time or **equivalent-sentence-shortening-devices**," must seek relief via habeas corpus petition, "because they contest the fact or duration of custody." **Moran v. Scondalle**, 218 F.3d 647, 650-51 (7th Cir. 2000) (citing **Preiser v. Rodriguez**, 411 US

-3-

475 (1973); and **Edwards v. Balisok**, 520 US 641 (1997)).

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., **Art. I, § 9, cl. 2.** The Suspension Clause prevents Congress from passing a statute that effectively suspends the writ absent rebellion or invasion." See **Felker v. Turpin**, 518 US 651, 663-64 (1996). It thus requires that the detained have a meaningful opportunity to demonstrate that he is being held pursuant to "the erroneous application or interpretation" of relevant law." **Boumedine v. Bush**, 553 US 723, 778 (2008) (quoting **INS v. St. Cyr**, 533 US 289, 302 (2001)).

## ARGUMENT

### I). Petitioner's Current Duration Of Confinement Is Unlawful As It Violates The Constitution And Laws Of The United States

Petitioner's current release date is $April$ , $2033$. However, with application of his earned First Step Act Credits ("FTCs"), his release would be up to one year sooner. Petitioner thus argues herein that his date to be released from prison should be much sooner than the date the Warden currently has him scheduled for.

Petitioner's current duration of confinement is no longer based on the judgment of a federal court, but instead, the result of the unlawful acts of ICE officials (and the Warden by operation thereof). Here, the Warden is denying Petitioner application of his earned FTCs because of an illegally imposed expedited removal order; and by operation thereof, is keeping Petitioner unlawfully incarcerated past the date of which the law would otherwise require Petitioner to serve absent the illegal order of removal. While the Warden has no authority over the issueance (or cancellation thereof for that matter) of the expedited removal order and may actually believe that he is acting in accordance with law; that does not change the fact that **the removal** order is illegal and is affecting Petitioner's duration of confinement.

-4-

a). <u>The Expedited Removal Order Was Illegally Imposed On Petitioner</u>

ICE officials served Petitioner with a document entitled, "Notice and Order of Expedited Removal." **Exhibit** No. 1. This order was issued pursuant to 8 U.S.C. § 1225(b)(1). Expedited removal proceedings under §1225(b)(1) are only applicable to two carefully defined categories of noncitizens who are inadmissible to the United States at a port of entry. Also, the Attorney General (now the Secretary of Homeland Security) is authorized to apply the expedited removal provision to a noncitizen "who has not been admitted or paroled" and who has not shown that they have been physically present in the United States for two years or longer. §1225(b)(1)(A)(iii). Legislative history demonstrates that Congress's intent in creating expedited removal was to provide a summary process to quickly expel non-citizens who were in the process of "arriving in" the United States but whom the U.S. did not want to allow further physical entry into the Country. See <u>Coalition For Humane **Immigration**</u> <u>Rights</u>, Brief of Amici Curiae, Immigration and Constitutional Scholars, Dkt. No. 25-5289 (D.C. Jan. 23, 2026). However, as evinced by the express language of the statute, §1225(b)(1) does not apply to noncitizens who have been paroled. **See** §1225 **(b)(1)** (attaching to the "[i]nspection of aliens arriving in the U.S. and certain other aliens-**who have not been admitted or paroled**-").

b). <u>Petitioner Was Paroled Into The United States</u>

On a case-by-case basis, the Department of Homeland Security (**"DHS"**) Secretary may parole and allow a noncitizen to come into the United States for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). This can include parole into the U.S. to face criminal prosecution. <u>Vazuez-Romero v.</u> <u>Garland</u>, 999 F.3d 656, 660 (9th Cir. 2021). Critically, this parole does not constitute an admission. Id. Rather, public benefit parole under §1182(d)(5)(A) permits the government to allow a noncitizen to come "into the Country for as long as the ... **public** benefit persists." <u>Cruz-Miguel v. Holder</u>, 650 F.3d 189, 198 (2d Cir. 2011). "[W]hen the purpose of such parole ... have been served[,] the alien

shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission into the United States." Id. (citing §1182(d)(5)(A)).

Petitioner was paroled into the United States and, before he may be subjected to proceedings of expedited removal, he must be determined to be: (1) an arriving alien; and (2) an applicant for admission. While he remains an arriving alien due to his parole status (8 C.F.R. §§ 1.2 and 1101(a)(13)), he is not and will not be an applicant for admission. Once Petitioner is returned to ICE's custody, as required, he will withdraw any pending application for admission which was halted on account of his parole. Therefore, he may not be subjected to any removal proceedings, much-less, any proceedings under §1225(b)(1); that is, until (i) the purpose of his parole has been achieved, (ii) he is returned to the custody of the paroling agency, and (iii) he is given a reasonable opportunity to depart voluntarily. See Matter of Badalamenti, 19 I. & N., Dec. 623 (BIA 1988) (noting that when the parole of an extradited alien is terminated he must be given a reasonable opportunity to depart voluntarily) (fully argued below; See infra at §III).

In this case, when the expedited order of removal was issued, Petitioner was still serving the term of imprisonment imposed by the federal court as a result of the purpose of his extradition and parole. Therefore, it cannot be determined that he is an applicant for admission and thus subject to expedited removal under §1225 (b)(1). This fact alone renders the expedited removal order unlawful; even if it was not enough, the plain language of the statute excludes parolees from expedited removal. See §1225(b)(1) (excluding admitted and paroled aliens from its application); see also, id, at (b)(1)(A)(iii)(II) (clarifying that subsection (b)(1) does not apply to aliens who have been admitted or paroled). Therefore, the foregoing evinces that the expedited removal order issued against Petitioner is unlawful. However, the affect this unlawful removal order is having on Petitioner becomes the overarching issue.

-6-

c). <u>Petitioner Is Being Unlawfully Disqualified From Applying His FTCs Because Of The Unlawful Expedited Removal Order</u>

At the end of 2018, Congress enacted Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) and coined it the "First Step Act" ("FSA"). Through this enactment, Congress directed the Attorney General (which deligated the task to the Director of the Bureau of Prisons) to develop a Risk and Needs Assessment System ("System"), which System was to, inter alia, (a) determine the recidivism risk of each prisoner; (b) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming; (c) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities; and (d) determine when a prisoner is ready to transfer into prerelease custody or supervised release inaccordance with 18 U.S.C. § 3624. **See 18 U.S.C. § 3632(a)(1), (3), (6) &** (7). However, Congress provided the Attorney General specific instructions on how this System must look and operate. **See, generally, §3632.**

Specifically, and relevant here, the System was to create a sentence shortening device which was to allow inmates to earn sentence   reduction incentives for successful participation in the evidence-based recidivism reduction programs or productive activities. §3632(d)(4)(A)(i)-(ii) (providing that prisoners can earn from 10 to 15 days a month for every 30-days of successful participation in evidence based recidivism reduction programming or productive activities). These sentence reduction incentives to supervised release were capped by Congress, **i.e.**, not to exceed 12-months. **18 U.S.C. § 3624(g)(3).** However, and relevant here, Congress also directed the Attorney General to not allow prisoners whom are the subject of a final order of removal under any provision of the immigration laws from applying their earned sentence reduction incentives. **§3632(d)(4)(E)(i).** Said differently, prisoners subject to a final order of removal under any provision of the immigration laws are prohibited from early release under the System.

Petitioner is being denied application of his earned FTCs pursuant to the unlawful expedited order of removal which is unconstitutionally extending his prison sentence by as much as 12-months. While the statute effectively disqualifies a prisoner who is the subject of a final order of removal from applying their earned FTCs; when the predicate order of removal has been issued illegally, their detention becomes illegally extended as well. Certainly after the prisoner reaches the point where, if not for the unlawful order of removal, he would be a free man. Such is the case for Petitioner; if it were not because of the unlawful order of removal entered against him, he would be scheduled for release much sooner than what the Warden currently has him scheduled for.This Court's intervention is needed to prevent injustice. However, the Court's jurisdiction to adjudicate these claims is complicated by 8 U.S.C. § 1252(a)(2)(A) which strips **ALL FEDERAL COURTS** of jurisdiction to review the legality of an expedited removal order issued under §1225(b)(1). **See infra, at §II.**

### d). The Illegally Imposed Expedited Removal Order Amounts To A Violation Of The Constitution's Due Process Clause

In light of the fact that Petitioner was legally allowed into the United States for a public benefit via a grant of temporary parole, in which such purpose has yet been served, ICE officials' actions here essentially amounts to a usurpation of jurisdiction and a malicious use of §1225(b)(1) to expedite Petitioner's removal **without judicial or** administrative review; not to mention, without minimal due process of law. Aliens in the United States are entitled to due process. Kercikv v. INS, 314 F.3d 913, 917 (7th Cir. 2003) (citing Zadvydas v. Davis, 533 US 678, 693 (2001)). The Seventh Circuit holds that these rights apply in deporation proceedings. Podio v. INS, 153 F.3d 506, 509 (7th Cir. 1998) (citation omitted).

While caselaw specifically distinguishes what level of due process is afforded to an **"arriving alien"** versus aliens who have already **"entered"** the United States, regardless of which protection this Court determines Petitioner was entitled to,

the Court will easily see that ICE officials violated even the most minimal require-
ments in this case. There can be "[n]o dispute [] that the Expedited Removal Statute
requires <u>some</u> process before an immigration officer may remove an arriving alien
pursuant to that statute." <u>U.S. v. Silva</u>, 313 F. Supp. 3d 660, 675 (D. Va. May 14,
2018) (citing 8 C.F.R. § 2[35].3(b)) (describing the procedure for entering an order
of expedited removal) (other citations omitted). Although an alien on the threshold
of initial entry stands on a different footing than an alien present in the country,
an arriving alien removed pursuant to the Expedited Removal Statute still has <u>some</u>
due process rights. <u>Shaughnessy v. U.S. ex rel Mezei</u>, 345 US 206, 212 (1953).

Due process requires, at a minimum, notice and an opportunity to respond. <u>Cleve-</u>
<u>land Bd. Edu. v. Loudermill</u>, 470 US 532, 542 (1985). In the context of expedited
removal proceedings, 8 C.F.R. § 235.3(b)(2)(i) governs the procedural requirements in
determining the admissibility of an arriving alien. In short, the alien is provided
with notice of the charges against him or her and given an opportunity to respond.
See generally, §235.3(b)(2)(i). None of the §235.3(b)(2)(i) requirements, as evinced
by the Expedited Removal Order itself, occurred in this case. ICE officials showed up
to the prison and served Petitioner a document entitled "Notice and Order of Expedited
Removal." See **Exhibit No. 1.** This was the first time Petitioner had ever seen an
ICE official during his incarceration; not to mention that the "**Notice and Order**"
was pre-dated and signed by the deportation's supervisory officer; evincing that no
meaningful opportunity to respond was afforded. When the ICE officer visited Peti-
tioner, he did not ask Petitioner any questions, did not solicit a sworn statement,
did not read him anything, muchless show him the required Form I-867B, and did not
ask him to initial any papers; which are all requirements of §235.3(b). Notwithstand-
ing, the title of the document, alone, violates the minimal due process requirements
because it ORDERED Petitioner REMOVED at the same time it provided him NOTICE;
proving by its own terms that Petitioner was not provided a meaningful opportunity
to respond.

In the same vein, the Fifth Amendment of the United States Constitution also prohibits the deprivation of a peron's liberty without due process of law. U.S. Const. Amd. V. However, "[i]n order to succeed on a due process claim, [], '[a] petitioner must do more than show that one of the tenets had been violated.'" Hussain v. Gonzales, 424 F.3d 622, 626 (7th Cir. 2005) (citation omitted). Instead, "a petitioner must produce 'concrete evidence' indicating that the due process violation 'had the potential for affecting' the outcome of the hearing." Ambati v. Reno, 233 F.3d 1054, 1061 (7th Cir. 2000) (citation omitted). In other words, to prevail on the due process claim, an alien must show prejudice." Hussain at 626 (citation omitted).

Petitioner asserts that this showing is easily made in his case; the illegal removal order has affected the duration of his confinement by as much as 12-months. This is prejudice in its truest form. Furthermore, had Petitioner been afforded true "NOTICE" with a meaningful opportunity to respond, he could have requested to withdraw his application for admission and consented to voluntary departure. See 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."); see also, 14 Gorden, Mailman, Yale-Loehr, and Wada, Immigration Law & Procedure: 1 CBP Inspector's Field Manual, §16.1(j) (Matthew Bender, Rev. ed 2025):

> "Under section 212(d)(5) of the Act, when the purposes of parole have been served, the paroled alien is to be returned to the custody from which he or she was paroled and his or her case is to be dealt with in the same manner as that of any other applicant for admission. ... If not found admissible,-the alien may be allowed to withdraw his or her application for admission and depart,- or the alien may be prepared for removal proceedings."

(citing INA §212(d)(5)); see full argument, infra at § III. Therefore, Petitioner makes the required showing that ICE officials violated his due process right and that such violation had, not only the potential of affecting the outcome of the removal proceedings, but also his earlier release from prison. Combined, Petitioner

-10-

makes an overwhelming case here. Nonetheless, to make matters worse, Congress has foreclosed any access to judicial or habeas review; for this reason, the only possible way for Petitioner to vindicate this constitutional infirmity is by invoking the suspension clause, under which this Court may exercise constitutional jurisdiction to review the underlying claim and determine the legality of Petitioner's further confinement.

## II). The Constitution's Suspension Clause Applies Here

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless in Cases of Rebellion or Invasion the public Safety may require it." **U.S. Const. Art. I, § 9, cl. 2.** Petitioner asserts that §1252(a)(2)(A) has effectively and unconstitutionally suspended the Writ if Habeas Corpus, as applied to him. Therefore, the Court must determine whether §1252(a)(2)(A) violates the Suspension Clause as applied to Petitioner. In doing so, the Court must first determine "whether [Petitioner] is prohibited from invoking the Suspension Clause due to some attribute of [Petitioner] or to the circumstances surrounding his arrest or detention." See **Boumedine v. Bush**, 533 US 739 (2008). If the Court determines that Petitioner is permitted to invoke the Suspension Clause, the Court would next "turn to the question of whether the substitute for habeas is adequate and effective to test the legality of Petitioner's detention." **Id.**

The Supreme Court has set forth three relevant factors to evaluate whether a petitioner is prohibited from invoking the Suspension Clause: **(1)** the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; **(2)** the nature of the sites where apprehension and then detention took place; and **(3) the** practical obstacles inherent in resolving the petitioner's entitlement to the writ." **Id. at 766.** Petitioner meets these factors.

-11-

### a). Petitioner Is Permitted To Invoke The Suspension Clause

First, it does not matter that Petitioner is not a U.S. Citizen; as in **Boumedine,** Petitioner is subject to the United States jurisdiction and its criminal justice system and is entitled to constitutional protection. **See Id.** (recognizing that the petitioners were not U.S. citizens but rather had been designated "enemy combatants"). Furthermore, as in **Boumedine,** "the procedural protections provided to [Petitioner] fell short of the procedures and adversarial mechanism that would eliminate the need for habeas corpus review." **Id.** 767. Specifically, in **Boumedine,** the Supreme Court found it insufficient that the detainees were not provided a lawyer or "advocate," the government's evidence was "accorded a presumption of validity," and the detainee's ability to present rebuttal evidence was limited by the circumstances of the detention. **Id.** Similarly, Petitioner had no involvement in ICE's determination that he was subjected to expedited removal-indeed, he was not even provided the opportunity to seek a credible fear interview as required under the statute. 8 U.S.C. § 1225(b)(1)(A)(ii) & (B). Petitioner's "status" as an individual serving time in a federal correctional institution militates against denial of the writ. **See Boumedine** at 766-67.

The Second factor also weighs in Petitioner's favor. **See id. at 768.** Petitioner was brought into this country to stand trial and has, since his conviction, been serving his sentence in the United States. Petitioner is not being held in a place where "there [is] no need to extend full constitutional protections," but instead "within the constant jurisdiction of the United States." **Id. at 769.** Thus, the second factor also counsels in favor of finding that Petitioner is entitled to the Writ.

The final factor also weighs in Petitioner's favor because there are no serious obstacles to permitting habeas corpus proceedings for him. There is no question that he has access to the U.S. court system, would be entitled to a habeas petition under 28 U.S.C. § 2255 to challenge his conviction, and would have been able to

challenge any removal order issued under any other provision of the INA. In Boumedine, the Court recognized that "[c]ompliance with any judicial process requires some incremental expenditure of resources," especially at a military detention facility abroad, but deemed these additional expenditures at Guantanamo Bay not dispositive because all compliance with judicial process requires some expenditure of resources. Id. at 769. Here, the expenses are far less than they would be at Guantanamo Bay, as Petitioner is part of the system provided for individuals within the U.S. Accordingly, Petitioner has met and satisfied each factor in Boumedine's test and therefore he is able to invoke the Suspension Clause.

### b). No Adequate And Effective Substitute Is Available For Petitioner

For Suspension Clause analysis, Petitioner next "turns to the question of whether the substitute for habeas provided by Congress is adequate and effective to test the legality of his detention." Id. at 739. "[T]he substitute of a collateral which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." Swain v. Pressly, 430 US 372, 382 (1977). However, a statute may violate the Suspension Clause where habeas corpus is foreclosed and alternative remedies are inadequate to ensure that the petitioner's continued detention does not violate federal law. See Boumedine, 533 US at 792.

While INA permits some habeas review of expedited removal orders, such review is ultimately insignificant. Congress provided for very narrow judicial review of individual expedited removal orders issued under §1225(b)(1). See §1252(e)(2) (limiting subsect of claims brought in a district court to: (A) whether the petitioner is an alien; (B) whether the petitioner was ordered removed under 8 U.S.C. §1225(b)(1); and (C) whether the petitioner can prove ... that he is an alien lawfully admitted for permanent residence [or was previously granted refugee or asylum status])." See 8 U.S.C. § 1252(e)(2). Section 1252(e)(5) further defines the scope of the inquiry under paragraph (B), limiting "the court's inquiry ... to whether such an order in fact was issued and whether it relates to the petitioner.

There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." §1252(e)(5).

Section 1252(e)(2) was Congress's intent at avoiding Suspension Clause issues and providing an adequate and effective vehicle to test the legality of an alien's confinement whom is the subject of an expedited removal order under §1225(b)(1). See §1252(a)(2)(A)(i) (providing that no court shall have,-except as provided in subsection (e),-jurisdiction to review any individual determination or entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal under §1225(b)(1)). However, today, as applied to Petitioner, it has left him wanting.

The enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRA") is where we find the birth of the language contained today in §1252(a)(2)(A) & (e)(2) which strips-ALL FEDERAL COURTS-of jurisdiction to review the legality of the imposition of an expedited removal order issued under §1225(b)(1). See Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). While the 110th Congress certainly envisioned §1252(e)(2) to be an adequate and effective substitute for its jurisdiction stripping provisions in §1252(a)(2)(A); it did not take account, reasonably so, how and when an expedited removal order (even if illegally issued) could ever keep an alien detained longer than the law required. Said differently, how the expedited removal order could do anything but immediately expel the alien from the country.

However, nearly thirty years post-IIRA, this Court is presented with a unique scenario which the 110th Congress could have never envisioned, i.e., the enactment of Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018); coined the "First Step Act" ("FSA"). Through the FSA, Congress promulgated 18 U.S.C. § 3632, which created a sentence reduction device for prisoners; but precluded application thereof to aliens whom are "the subject of a final order of removal under any provision of the immigration laws[.]" §3632(d)(4)(E)(i).

-14-

Petitioner avers that he has earned sentence reduction credits under 18 U.S.C. § 3632(d)(4)(C); however, the illegal expedited removal order issued under §1225(b)(1) is precluding him from applying these credits and affecting the duration of his confinement. Section §1252(e)(2) precludes the habeas review Petitioner seeks, effectively suspending the Writ without an adequate and effective collateral substitute; in violation of the Constitution.

### III). Petitioner, An Involuntary Parolee, Cannot Be Subjected To Any Removal Proceedings Until The Purpose For His Parole Has Been Achieved And He Is Returned To The Custody Of The Paroling Agency And Given An Opportunity To Depart Voluntarily

Petitioner is fearful that once this Court ORDERS the respondents to answer this petition that the government will remove these illegal final orders, only to recommence illegal removal proceedings under a differnet statute.  Petitioner's fears are well founded; this case itself evinces that ICE has no regard for Petitioners' rights        as it has willfully and intentionally issued the unlawful removal order in this case. If that were not enough, the recent developments in two cases which were recently before the Seventh Circuit tell the rest of the story. See Edah v. ICE, et al, 25-2562; and Herrera v. Dep't of Homeland Sec., 25-2520 (7th Cir.).

Edah and Herrera both filed similar petitions for writ of habeas corpus in the United States District Court for the Western District of Wisconsin arguing substantially similar arguments as presented herein. See Edah v. ICE, et al, 25-cv-577; and Herrera v. Dep't of Homeland Sec., 25-cv-584 (W.D. Wis.).  The district court dismissed their petitions, largely holding that only the courts of appeals has jurisdiction to review removal orders; the court further rejected the petitioners' suspension clause argument. **Id., respectively.** Both Edah and Herrera appealed to the Seventh Ciruit, whom recruited counsel and consolidated both cases. See Edah, 25-2562 & Herrera, 25-2520 (7th Cir. Dec. 17, 2025). Recruited counsel filed a merits brief, arguing that the removal orders issued under §1225(b)(1) were illegal and the suspension clause applies. **See id., respectively (7th Cir. Feb. 9, 2026).** However, instead of filing a response brief, the government cancelled Edah & Herrera's removal

orders issued under §1225(b)(1), reinitiated removal proceedings under 8 U.S.C. § 1228(b), and moved the Seventh Circuit to dismiss the appeal as moot. **Id. at (7th Cir. Mar. 16, 2026), respectively.**

However, §1228(b) proceedings do not apply to Petitioner either. For starters, even assuming it did, by the expressed terms of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(1) & (e)(2)(i), removal proceedings for paroled aliens cannot commence or continue until the **purpose of such parole** has been served/achieved/accomplished. Notwithstanding, §1182(d)(5)(A) provides an additional requirement, **i.e.,** and the alien must "forthwith return or be returned to the custody from which he was paroled **-and thereafter his case shall continue-** to be dealt with in the same manner as that of any other applicant for admission to the United States." Said differently, removal proceedings for criminal alien parolees do not commence or continue until the purpose for the parole has been achieved/served/accomplished, **e.g.,** prosecution and completion of the sentence imposed, and the alien is returned to the custody of the paroling agency. In this context, ICE officials cannot commence, re-commence, or continue any removal proceedings until Petitioner completes his sentence and he is returned to ICE's custody. To date, Petitioner is still in the BOP's custody serving out his sentence imposed; no removal proceedings can commence yet.

In the same vein, fairly reading §1182(d)(5)(A) as a mandate to treat parolees as any applicant for admission after the purpose of the parole has been served; how then would 8 U.S.C. § 1225(a)(4) apply? Under §1225(a)(4), an applicant for admission is entitled to withdraw the application for admission and depart immediately from the U.S. Based on the express language of §§ 1182(d)(5)(A) and 1225(a)(4), it is fair to conclude that Petitioner is entitled to an opportunity to depart voluntarily before any removal proceedings may be initiated against him. Petitioner has no intentions of applying for admission; he did not **"enter"** nor is he seeking entry into the U.S. The decision of the Board of Immigration Appeals ("BIA") in the <u>Matter of Badalamenti</u> supports this conclusion. **19 I. & N., Dec. 623 (BIA 1988).** The Badalamenti

-16-

court held that "[a]n alien who was extradited to the United States and paroled for purposes of prosecution does not automatically become an applicant for admission upon termination of parole." **Id. at 626.** "If the parole of an alien who has been extradited to the United States is terminated, he must be given a reasonable opportunity to depart unless there is evidence he is an applicant for admission. **Id.** However, "[a] parolee who cannot or will not depart from the United States will no doubt at some point become subject to exclusion proceedings as an applicant for admission." **Id.** The Badalamenti court decided not to "define that point" but held "only that it does not arise until after the parolee has been given a fair and reasonable opportunity to depart." **Id.**

The Badalamenti holding appears to continue to be good law as it has been followed by at least two courts; and to date, the BIA has not overruled it. **See, e. g., <u>Gutierrez v. Garland</u>,** No. 20-2222; 2022 US App. LEXIS 31015 at ⁎2 (2d Cir. Nov. 9, 2022):

> "The first and second removal proceedings, initiated in 2009 and 2019, respectively, were terminated on the ground that Gutierrz [] had not been given a 'reasonable opportuniy to depart' without which an involuntary parolee cannot be deemed an 'applicant for admission' eligible for removal under §1182."

(quoting <u>Badalamenti</u>, supra); see also, <u>U.S. v. Brown</u>, 148 F. Supp. 2d 191 (E.D.N.Y.

Jan., 2001):

> "An alien who is extradited and paroled into the United States for purposes of prosecution does not automatically become an applicant for admission to the United States upon or prior to termination of his parole. Because such an alien is not, per se, an applicant for admission, he cannot be excluded or removed. Accordingly, barring evidence that the alien affirmatively seeks admission or is otherwise subject to removal, such an alien must be afforded 'a fair and reasonable opportunity to depart' voluntarily before he becomes subject to removal proceedings."

> "There is no evidence that Brown sought admission to the United States at any point or, as of the date of the removal proceedings, was in the country voluntarily. Accordingly, the government concedes that the INS was required to afford Brown a reasonable opportunity to depart the United States voluntarily prior to subjecting him to removal proceedings."

(citing **Badalamenti, supra**) and **<u>U.S. ex rel Bradley v. Watkins</u>,** 163 F.2d 328, 332

(2d Cir 1947) (holding that order under which alien was to be deported after he was forcibly brought to the United States as a prisoner of war and deemed, contrary to the evidence, to be an applicant for admission, was entered "without jurisdiction" because alien had a right to depart voluntarily). The same would apply here in Petitioner's Case.

Petitioner asks this Court to take judicial notice that **Gutierrez's** 2009 and 2019 removal proceedings were terminated by either an immigration judge ("IJ") or the BIA because the government had failed to provide Gutierrez "a reasonable opportunity to depart." See **Gutierrez**, 2022 US App. LEXIS at [*]3 ("In January 2020, the IJ ordered Gutierrez [] removed-**after finding that the Government had finally**-provided sufficient evidence that Gutierrez had been given a reasonable opportunity to depart"). Said another way. at least since 2019, the BIA's **Badalamenti** decision was still good law. Thus, a fair reading of the law, as presented, evinces that **NO** removal proceedings can commence againt an involuntary parolee alien until: **(1)** he completes the purpose he was paroled to the U.S.; **(2)** he is returned to the paroling agency's custody; and **(3)** he is given a fair and reasonable opportunity to depart volintarily; none of which has occurred in this case.

Notwithstanding, removal proceedings under §1228(b) would not apply to Petitioner because such proceedings would only apply to aliens convicted of a felony after admission or having otherwise effectuated an entry. This is because the statute mandates that the Attorney General made the determination of deportability under 8 U.S.C. § 1227(a)(2)(A)(iii), which specifically provides **for the** deportation or removal of "[a]ny alien who is convicted of an aggravated felony-at any time after admission- ...." §1227(a)(2)(A)(iii).

The plain language of these statutes evinces that admission of the alien is an element of a deportability determination. For this reason, removal proceedings under section 1228(b) are not applicable to Petitioner's case. Congress has carefully prescribed laws that cover all possible scenarios of inadmissibility or deport-

-18-

ability situations. For example, aliens who are unlawfully present in the United States are removable under section 1182(a)(9(C)(i)(I) on grounds of inadmissiblity.. Aliens convicted of crimes-other than those who have been admitted or have otherwise effectuated an entry-are removable under §1182(a)(2)(i)(II) on inadmissibility grounds; however, only after evidence that they are applicants for admission.

There are two categories of removable aliens: inadmissible and deportable; Petitioner is neither at this point. He cannot be removed under §1182(a)(2) on inadmissibility grounds because he is not yet an applicant for admission; and he cannot be determined to be deportable because he has never effectuated an entry. The Attorney General simply cannot determine the deportability of an alien who is not physically present in the United States. Similarly, the Attorney General cannot determine the inadmissibility of an alien who is not seeking admission. As detailed above, Petitioner was paroled into the United States to stand trial on criminal charges; his parole was issued under §1182(d)(5). Thus, he is not an applicant for admission until the purpose for his parole has been achieved.

In summation, and based on the applicable statutory language, it is fair to conclude that Petitioner cannot be subjected to removal under §1225(b)(1) or 1228(b); 1225(b)(1) simply does not apply to aliens who have been paroled and 1228(b) only applies to aliens who commited felonies after admission or after otherwise effectuating an entry into the United States. It has been established by the United States Supreme Court, for immigration purposes, that an alien taken into custody before effectuating an entry has not entered the country. See <u>Leng May Ma v. Barber</u>, 257 US 185, 188 (1958):

> "The detention of an alien in custody pending determination of his admissibility does not legally constitute an entry, although the alien is physically within the United States." "When parole is revoked, the applicant is, in theory, on the threshold of initial entry."

Thus, the decision in <u>Leng May Ma</u> supports Petitioner's claim that he has never effectuated an entry; which makes him exempt from deportability determination. At

least at the present moment.

Therefore, in line with statute and the **Badalamenti** decision, Petitioner's immigration status is not, and canot be that of an "alien seeking admission" nor that of an alien deportable after admission. His immigration status remains, rather, a "paroled alien" pursuant to §1182(d)(5)(A) where he should remain under such protection until, as prescribed by the same statute, the purpose of his parole has been achieved and he is returned to ICE's custody.

Because of the real fear Petitioner harbors that ICE will do the same here as it did in **Edah** and **Herrera**, Petitioner urges this Court to not stop short of determining Petitioner's removability under §1225(b)(1); but also determine if ICE officials can commence-**any removal proceedings**-prior to Petitioner achieving the purpose of his parole and being returned to ICE's custody and afforded a reasonable opportunity to depart voluntarily. Petitioner asserts that he can furnish his own flight back to his country. Thus, if the Court finds that Petitioner is entitled to an opportunity to depart voluntarily before any removal proceedings can be initiated, Petitioner would then ask the Court to issue a restraining order against ICE to keep them from commencing another illegal removal proceeding.

### RELEVANT PROCEEDINGS IN OTHER SUBSTANTIALLY SIMILAR CASES

It is important to note that the United States District court for the Western District of Wisconsin has, on multiple occasions, rejected similar arguments presented herein and refuses to exercise jurisdiction under the Suspension Clause. See, e.g., **Loza v. Dep't of Homeland Sec.**, 25-cv-656; and **Espinal v. Dep't of Homeland Sec.**, 25-cv-586 (W.D. Wis. Mar. 20, 2026) (Espinal opinion attached hereto as **Exhibit No. 2**). In **Loza** & **Espinal**, the district court held that, "[t]o avoid Suspension Clause problems, the REAL ID Act permits judicial review in the federal courts of appeals over 'constitutional claims or questions of law.'" **Espinal** at pg. 4 (citing 8 U.S.C. § 1252(a)(2)(D)); see also, id. at pg. 5 ("Thus, the jurisdictional limitation imposed by the REAL ID Act does not violate the Suspension

-20-

Clause because a petition for review under §1252(a)(5) is 'an adequate substitute for habeas proceedings.'") (citations omitted). Thus, the district court in those cases believed that §1252(a)(2)(D) & (a)(5) provided petitioners an adequate and effective substitute for a habeas proceedings.

However, the district court in those cases ignores the fact that the Seventh Circuit's opinion in **Khan v. Holder** specifically held contrary; the Khan court held that §1252(a)(2)(D) explicitly provides that it does not apply to the restrictions of §1252(a)(2)(A) or (e)(2). 608 F.3d 325, 328-29 (7th Cir. 2010). The same goes for the district court's latter position; §1252(a)(5), much like §1252(a)(2)(D), explicitly precludes itself from expedited removal orders issued under §1225(b)(1). See **§1252(a)(5)** (exempting subsection (e) from its application). Said another way, §1252(a)(2)(D) & (a)(5) do not apply to the jurisdiction stripping and limiting provisions of §1252(a)(2)(A) & (e)(2). This fact was made clear in **Edah** & **Herrera** when the argument was raised before the Seventh Circuit and the government did not contend, but removed the illegal orders. See, e.g., **Edah**, supra 25-2562 **(7th Cir. Mar. 16, 2026).** Therefore, this Court will be able to clearly see the error in the Western District court's opinion.

## EXHAUSTION OF REMEDIES

The exhaustion of remedies in this case do not apply for one simple reason: there are none available. ICE does not have any administrative procedures where the legality of the expedited order of removal-issued under §1225(b)(1)-may be challenged. Notwithstanding, even though the BOP has in place an administrative remedy system, the BOP and Warden lack the necessary authority to review or invalidate an unlawful expedited order of removal. Therefore, any attempt to resolve the issue through BOP administrative remedies would be futile.

## REQUESTED RELIEF

Based on the foregoing, Petitioner respectfully requests that the Court declare the unlawful removal order void ab initio, order the Warden to apply Petitioners earned FTCs, adjust Petitioner's release date accordingly, and issue a restraining order against ICE to keep them from commencing or initiating ANY removal proceedings until Petitioner is retuned to its custody and afforded a fair and reasonable opportunity to depart voluntarily.

Submitted, this the 19th day of April, 2026.

Christopher N. Agbaje # 99051-510
Federal Crrectional Institution
Post Office Box 1000
Oxford, Wisconsin 53952

## DECLARATION

I, Christopher N. Agbaje , do hereby declare under penalty of perjury that the foregoing is true, correct, and complete to the best of my knowledge and belief.

EXECUTED ON APRIL 19, 2026.

Christopher N. Agbaje # 99051-510
Federal Correctional Institution
Post Office Box 1000
Oxford, Wisconsin 53952

-22-